KATRINA BRADSHAW, Plaintiff-Appellee, v. ROBERT J. PELLICAN, Defendant-Appellant.

Second District   No. 2—86—0026

Opinion filed February 5, 1987.

Phyllis J. Perko, of Harlovic & Perko, of West Dundee, for appellant.

Marmarie J. Kostelny, of Zimmerman & Smith, of Elgin, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Robert J. Pellican, appeals from orders of the circuit court of Kane County finding him to be the father of Natasha Bradshaw and ordering him to pay child support. Defendant claims the

court did not have jurisdiction because defendant was never personally served with summons and that the court erred in denying his petition to vacate pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) and in awarding attorney fees to plaintiff both in the trial court and on appeal.

Plaintiff, Katrina Bradshaw, commenced this paternity action by filing her complaint on June 8, 1984. The special process server's unverified return indicates that defendant was personally served with a summons and copy of the complaint on October 10, 1984. Defendant failed to appear, and on November 8, 1984, the court entered a default judgment finding defendant to be the father of Natasha Bradshaw and ordering defendant to pay $876 for expenses of the child's birth. On January 17, 1985, the court ordered defendant to pay $60 per week for child support.

On June 1, 1985, defendant filed his special appearance, limited to a motion to quash service of summons. Defendant's affidavit accompanying the motion stated that defendant had never been personally served. The record shows two orders dated June 18, 1985. The first order denied defendant's special appearance and purported to convert it into a general appearance. The second order states that the cause was set for a hearing on plaintiff's petition for a rule to show cause against defendant. After stating "the parties having reached agreement," the court found an arrearage of $1,320 on child support and ordered defendant to pay $1,000 to plaintiff's attorney immediately and to pay an additional $5 per week on the balance of the arrearage.

■■ Defendant on appeal contends that he was never personally served with summons and thus the trial court erred in denying his special and limited appearance. Preliminarily, however, we must determine the nature of the second order of June 18. If the defendant voluntarily submitted to the court's jurisdiction he may not maintain his jurisdictional objection. (See *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87, 145 N.E.2d 77.) We are not aided in this inquiry by the fact that we have not been supplied with a transcript or bystander's report of the proceedings of June 18. It is the duty of the appellant to provide a sufficient record on appeal. (*In re Marriage of Pillot* (1986), 145 Ill. App. 3d 293, 299, 495 N.E.2d 1247.) In the absence of a complete record, we must presume that the court's orders were proper. *Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1042, 389 N.E.2d 182.

■ A defendant who unsuccessfully challenges service of process in the trial court may stand on his jurisdictional objection, take a default judgment and appeal, or submit to the court's jurisdiction and

waive the objection. (Ill. Rev. Stat. 1985, ch. 110, par. 2—301.) Any action by a litigant which recognizes the case as being in court will constitute a waiver unless it is solely for the purpose of objecting to jurisdiction. (*Lord v. Hubert* (1957), 12 Ill. 2d 83, 87, 145 N.E.2d 77; *In re Marriage of Schuham* (1983), 120 Ill. App. 3d 339, 344, 458 N.E.2d 559.) A party may appear ever after judgment and become bound by the foregoing proceedings. (*Lord v. Hubert* (1957), 12 Ill. 2d 83, 87, 145 N.E.2d 77.) The critical question is whether the defendant has taken any step which requires the exercise of jurisdiction by the court. *Supreme Hive, Ladies of the Maccabees of the World v. Harrington* (1907), 227 Ill. 511, 525, 81 N.E. 533.

In *Welter v. Bowman Dairy Co.* (1943), 318 Ill. App. 305, 315, 47 N.E.2d 739, by agreement of the parties defendant was granted leave to file his appearance and was ordered to file an affidavit of merits within five days. The agreed order for an extension of time to defendant recognized the jurisdiction of the court for all purposes. (318 Ill. App. 305, 316, 47 N.E.2d 739.) In *Slade v. Bowman* (1977), 49 Ill. App. 3d 242, 364 N.E.2d 922, the court found that by arguing the merits of plaintiff's section 72 petition (Ill. Rev. Stat. 1977, ch. 110, par. 72, now codified as Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), defendant had made a general appearance and thereby waived his objection as to lack of notice. 49 Ill. App. 3d 242, 245-46, 364 N.E.2d 922.

■■ In the present case, the court's order recited the agreement of the parties that a deficiency existed and created an installment plan for making up the deficiency. This clearly recognized the validity of the prior proceedings and invoked the court's jurisdiction to alleviate the harshness of a contempt citation. Defendant cannot invoke the court's jurisdiction, then question that jurisdiction on appeal. (See *Supreme Hive, Ladies of the Maccabees of the World v. Harrington* (1907), 227 Ill. 511, 525, 81 N.E. 533.) We note in passing that the waiver argument was not raised by the parties. Nonetheless, we may sustain the judgment of the trial court on any basis which appears in the record. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.) Since we have no report of proceedings, we assume the trial court's order accurately reflects the proceedings of June 28.

■■■ Defendant next contends that the court erred in denying his section 2—1401 petition to vacate. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) After the June 18 hearing, defendant apparently took no steps to reduce the deficiency, and a second petition for rule to show cause was filed August 21, 1985. On October 2, the rule was issued, and defendant was granted leave to file his section 2—1401 petition.

Defendant's affidavit in support of the petition averred that defendant had never received notice of the hearing on the paternity action, that plaintiff had admitted to defendant that she had had sexual relations with a co-worker, and that defendant's previous attorneys had failed to inform him of the section 2—1401 remedy. The court held a hearing on the petition, and by letter opinion dated November 18, 1985, the petition was denied.

Section 2—1401 provides a comprehensive statutory procedure by which final orders and judgments can be challenged more than 30 days after their rendition. To be entitled to relief, a petitioner must make specific factual allegations supporting (1) the existence of a meritorious defense or claim, (2) due diligence in presenting this defense or claim to the trial court, and (3) due diligence in filing the section 2—1401 petition. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381; *Fabian v. Norman* (1985), 138 Ill. App. 3d 507, 510, 486 N.E.2d 335.) Whether to grant a section 2—1401 petition lies within the sound discretion of the trial court, depending upon the facts and equities presented. *Canton v. Chorbajian* (1980), 88 Ill. App. 3d 1015, 1021, 410 N.E.2d 1166.

■ Defendant has not shown diligence either in presenting his alleged defense to the trial court in the original action or in presenting his section 2—1401 petition. The court impliedly found that defendant received notice of the paternity action on October 10, 1984. He was mailed notice of both the paternity hearing and the child-support hearing; he had his wages garnished on four occasions; and he received notice of two petitions for rule to show cause, yet he failed to present his allegedly meritorious defense to the court until threatened with a contempt citation, nearly one year after the initial paternity hearing. This does not represent the type of due diligence contemplated by section 2—1401.

A section 2—1401 petition must show that the petitioner's failure to present his defense in the original action was a result of excusable mistake. (*Carroll Service Co. v. Schneider* (1986), 144 Ill. App. 3d 38, 40, 494 N.E.2d 253; *American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 643, 400 N.E.2d 102.) In the instant case, defendant offered no excuse for the 12-month delay in presenting his defense except that his previous attorneys had failed to inform him of the procedure provided for in section 2—1401. However, a section 2—1401 petitioner is responsible not only for his own negligent conduct, but for that of his attorneys. (*Carroll Service Co. v. Schneider* (1986), 144 Ill. App. 3d 38, 40, 494 N.E.2d 253; *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 674, 360 N.E.2d 1355.) Defendant's delay

was not the result of excusable neglect by himself or his former attorneys. See *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 222, 499 N.E.2d 1381.

Even after defendant's special appearance was denied and the agreed order entered on June 18, 1985, defendant made no mention of his alleged defense, but waited until October 2, another 3½ months, before filing his section 2—1401 petition. In *Cooper v. United Development Co.* (1984), 122 Ill. App. 3d 850, 857, 462 N.E.2d 629, a delay of over three months after learning of the dismissal order was held to show a lack of diligence. Defendant's 3½-month delay, based on the excuse that he was never told of the proper procedure, does not represent due diligence.

Anticipating such a result, defendant asks us to consider a line of cases in which the defendant was relieved of the consequences of his negligence based on equitable considerations. (See, *e.g., Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348; *In re Marriage of Lorenzi* (1980), 84 Ill. App. 3d 427, 405 N.E.2d 507; *Lutz v. Lutz* (1977), 55 Ill. App. 3d 967, 371 N.E.2d 348.) In these cases, courts have relaxed the strict diligence requirement where plaintiff has attempted to perpetrate a fraud upon defendant and upon the court. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 612-13, 190 N.E.2d 348; *In re Marriage of Lorenzi* (1980), 84 Ill. App. 3d 427, 432-33, 405 N.E.2d 507; *Lutz v. Lutz* (1977), 55 Ill. App. 3d 967, 970, 371 N.E.2d 348), or, in one case, where defendant attempted to represent himself *pro se* and alleged a meritorious defense (*Eastman Kodak Co. v. Guasti* (1979), 68 Ill. App. 3d 484, 488, 386 N.E.2d 291). In *Lutz*, for example, defendant was in the military in Virginia and received no notice of the *ex parte* divorce action until two months after entry of judgment. (*Lutz v. Lutz* (1977), 55 Ill. App. 3d 967, 970, 371 N.E.2d 348.) In *Elfman*, defendant's counsel neglected to file an answer because he was distraught at the illness and death of his mother, the trial was held two months before the listed call date, plaintiff introduced as evidence of damages bills from an unrelated gall bladder operation, and execution was purposely delayed until more than 30 days after judgment. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 612-15, 190 N.E.2d 348.) Such extenuating circumstances are not present in the instant case, where defendant alleged no reason for his delay other than the arguable negligence of prior counsel.

Although not necessary to our decision on this issue, we note in passing that defendant's section 2—1401 petition does not affirmatively allege a defense. It alleges only that plaintiff had admitted to defendant having had sexual relations with another man, a co-worker.

The petition does not allege that defendant is not the father of Natasha or that the co-worker definitely is the father, only that he might be. Thus, the failure of defendant's previous attorneys to inform him of the remedy provided by section 2—1401 might have been based on a strategic decision that such a petition would not be successful because of the lack of a meritorious defense.

Finally, defendant challenges the trial court's award of attorney fees, both in the trial court and on appeal. Defendant asserts only that the fee award should be reversed if he is successful on this appeal. As we have determined that defendant has not been successful in the other issues in this appeal, we need not consider this issue further.

■ By a supplemental order dated May 5, 1986, the trial court also awarded petitioner attorney fees attributable to this appeal. On June 25, 1986, defendant challenged this award by motion in this court asking us to vacate this order, and we ordered the motion taken with the case. We now grant that motion.

The trial court based its authority to award fees after filing of the notice of appeal on three appellate court cases, *In re Marriage of Theeke* (1982), 105 Ill. App. 3d 119, 128, 433 N.E.2d 1311; *In re Marriage of McBride* (1981), 102 Ill. App. 3d 84, 87-88, 429 N.E.2d 867; and *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1061, 419 N.E.2d 598. As defendant correctly points out, however, recent decisions from this district have specifically rejected those decisions, holding that a trial court has no jurisdiction to award attorney fees after the notice of appeal has been filed. (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 622-23, 435 N.E.2d 1361; see also *In re Marriage of Justema* (1981), 95 Ill. App. 3d 483, 488, 420 N.E.2d 796.) Plaintiff cites no contrary authority from this district except the specially concurring opinion of Justice Van Deusen in *Pease* (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 624, 435 N.E.2d 1361 (Van Deusen, J., specially concurring)) and offers no other basis for overruling those cases. A circuit court is bound by the holdings of the appellate court for the district in which it lies. *People v. Thorpe* (1977), 52 Ill. App. 3d 576, 579, 367 N.E.2d 960.

For the foregoing reasons, the order of the circuit court of Kane County awarding plaintiff prospective attorney fees for defending this appeal is reversed; the circuit court's other orders are in all respects affirmed.

Affirmed in part; reversed in part.

NASH and REINHARD, JJ., concur.